IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BENJAMIN MATTHEWS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-0014 |
| | § | |
| HARRIS COUNTY, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Pending before the court[1] is Defendant Harris County's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 16), Defendant Harris County's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 21), Defendant Harris County's Third Motion to Dismiss (Doc. 27), and Defendant Eric McCartney's ("McCartney") Motion to Dismiss (Doc. 32). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, Defendant Harris County's Motion to Dismiss Plaintiff's First Amended Complaint and Motion to Dismiss Plaintiff's Second Amended Complaint are **DENIED AS MOOT**, and Defendant Harris County's Third Motion to Dismiss and Defendant McCartney's Motion to Dismiss are **GRANTED IN PART AND DENIED IN PART**.

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. See Doc. 38, Ord. Dated July 11, 2018.

## I. Case Background

Plaintiff filed this civil rights action against Harris County, a Harris County deputy sheriff now denoted as Defendant McCartney, and a sports bar alleging violations of Plaintiff's constitutional rights, and asserting various state law causes of action.[2] The case was removed to this court on January 2, 2018.[3]

### A. **Factual Background**

On June 14, 2016, Plaintiff was leaving a sports bar after it had closed.[4] Defendant McCartney, who was employed by the sports bar as a private security guard, was patrolling the parking lot outside the sports bar and wearing his Harris County uniform.[5] Defendant McCartney approached Plaintiff as he was getting into his vehicle.[6] At that time, Plaintiff had not committed any acts contrary to the law.[7] Defendant McCartney immediately became hostile toward Plaintiff, asking if Plaintiff had a desire to go to jail.[8] Plaintiff, answering that he did not want to go to jail, attempted to close his car door, but Defendant McCartney used his

---

[2]   See Doc. 1, Not. of Removal.

[3]   See id.

[4]   See Doc. 14, Pl.'s Orig. Compl. p. 2.

[5]   Id. p. 4.

[6]   Id.

[7]   Id. p. 2.

[8]   Id. p. 4.

2

nightstick to prevent the door from fully closing.[9] When Plaintiff again attempted to close his car door, Defendant McCartney used his nightstick to keep the door from completely shutting and ordered Plaintiff to exit the car.[10]

Upon exiting, Plaintiff noticed damage to his vehicle that he believed had been caused by Defendant McCartney.[11] As Plaintiff voiced his suspicions to Defendant McCartney, Defendant McCartney ordered him to put his hands behind his back.[12] Defendant McCartney subsequently handcuffed Plaintiff.[13] As two officers from the Houston Police Department ("HPD") approached Plaintiff and Defendant McCartney, Plaintiff complained to them that Defendant McCartney had damaged his vehicle.[14]

Upon hearing Plaintiff's complaint, Defendant McCartney used his taser on Plaintiff, who was handcuffed.[15] Plaintiff fell to the ground, and as he was lying on the ground, Defendant McCartney repeatedly kicked and tased him.[16] At some point, Defendant McCartney roughly tore the taser prongs from Plaintiff's chest and

---

[9]   Id. p. 2.

[10]   Id.

[11]   Id.

[12]   Id. p. 3.

[13]   Id.

[14]   Id.

[15]   Id.

[16]   Id.

instructed the HPD officers to transport Plaintiff to the county jail.[17]  Plaintiff was not told of the reason for his arrest.[18]

The HPD officers transported Plaintiff to the jail.[19]  However, upon arrival, they were told by the jail deputies that Plaintiff could not be booked in his present physical condition.[20]  The HPD officers transported Plaintiff to Ben Taub Hospital.[21]  After the HPD officers escorted Plaintiff into the hospital, they removed his handcuffs and departed.[22]  No charges stemming from this incident have been filed against Plaintiff.[23]

The hospital treated Plaintiff and released him.[24]  Plaintiff returned to the hospital roughly one week later complaining of pain.[25]

**B.**  **Procedural Background**

On December 12, 2017, Plaintiff filed this action against Harris County, an officer "E. McKenny," and the sports bar.[26]

---

[17]    Id.

[18]    Id.

[19]    Id.

[20]    Id.

[21]    Id.

[22]    Id.

[23]    Id.

[24]    Id.

[25]    Id. pp. 3-4.

[26]    See Doc. 1-3, Pl.'s Orig. Pet.

Defendant Harris County removed to this court on January 2, 2018, and filed a motion to dismiss on January 5, 2018.[27]  Plaintiff amended his complaint purportedly to comply with federal standards on February 19, 2018.[28]  Plaintiff moved for leave to file a second amended complaint on February 22, 2018.[29]  The only proposed change was to correct the name of the deputy sued from "E. McKenny" to Defendant McCartney.[30]

Defendant Harris County filed a motion to dismiss the first amended complaint on February 26, 2018.[31]  On February 27, 2018, the court granted Plaintiff's motion for leave to file a second amended complaint.[32]  Shortly after leave was granted, the case was referred to the undersigned.[33]

Subsequently, Defendant Harris County filed a motion to dismiss Plaintiff's second amended complaint on March 8, 2018, wholly incorporating its first motion to dismiss and pointing out that the only change in the amendment was "the spelling of a

---

[27]    See Doc. 1, Not. of Removal; Doc. 2, Def.'s Mot. to Dismiss.

[28]    See Doc. 11, Pl.'s 1st Am. Compl.

[29]    See Doc. 13, Pl.'s Mot. for Leave to File 2d Am. Compl.; Doc. 14, Pl.'s 2d Am. Compl.

[30]    Id.

[31]    See Doc. 16, Mot. to Dismiss Pl.'s 1st Am. Compl.

[32]    See Doc. 17, Ord. Dated Feb. 17, 2018.

[33]    See Doc. 20, Ord. Dated Mar. 2, 2018.

name."[34]  Plaintiff responded on March 29, 2018.[35]

On April 25, 2018, Defendant Harris County filed a third motion to dismiss, again wholly incorporating the first motion to dismiss and adding new arguments.[36]  Plaintiff filed a response on May 8, 2018, with new supplemental exhibits.[37]

Defendant McCartney filed his motion to dismiss on May 16, 2018.[38]  Plaintiff responded on June 4, 2018.[39]

## II.  Legal Standard

Federal Rule of Civil Procedure ("Rule") 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 803 n.44 (5th Cir. 2011)(quoting True v. Robles, 571 F.3d 412, 417 (5th Cir. 2009)).  The court may also

---

[34]  See Doc. 21, Def.'s Mot. to Dismiss Pl.'s 2d Am. Compl.

[35]  See Doc. 25, Pl.'s Resp. to Def.'s Mot. to Dismiss Pl.'s 2d Am. Compl.

[36]  See Doc. 27, Def.'s 3d Mot. to Dismiss.

[37]  See Doc. 28, Pl.'s Resp. to Def.'s 3d Mot. to Dismiss.

[38]  See Doc. 32, Def.'s Mot. to Dismiss Pl.'s 2d Am. Compl. In one of Defendant Harris County's motions, it raises the argument that Defendant McCartney was never served.  See Doc. 27, Def.'s 3d Mot. to Dismiss. However, Defendant McCartney filed his motion to dismiss with no mention of the insufficiency of service.  Therefore the court finds Defendant Harris County's motion to be moot.

[39]  See Doc. 33, Pl.'s Resp. to Def.'s Mot. to Dismiss.

consider, in addition to the complaint itself, "any documents attached to the complaint[] and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

### III. Analysis

The court addresses the parties' arguments by claim, beginning with the state law claims of assault, battery, false imprisonment, negligence, and negligent hiring. The court then addresses the remaining constitutional claims of false arrest, unlawful seizure, excessive force, and property damage.

## A. State Law Claims

A Texas county is a "governmental unit" covered by the Texas Tort Claims Act ("TTCA"). Tex. Civ. Prac. & Rem. Code § 101.001(3)(B). Texas governmental units enjoy immunity from claims unless Texas has consented to allowing suit. Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004). Generally, the TTCA waives immunity for property damage, personal injury, and death caused by wrongful acts of employees if arising "from the operation or use of a motor-driven vehicle or motor-driven equipment" or caused by "a condition or use of tangible personal or real property." See Tex. Civ. Prac. & Rem. Code § 101.021. No waiver of immunity is available for claims "arising out of assault, battery, false imprisonment, or any other intentional tort." Tex. Civ. Prac. & Rem. Code § 101.057.

"Because the [TTCA] is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit . . . are assumed to be 'under [the Tort Claims Act]' for the purposes of [Tex. Civ. Prac. & Rem. Code § ("Section")] 101.106" Mission Consol. Indep. Sch. Dist. v. Garcia, 253 S.W.3d 653, 659 (Tex. 2008); see also Bustos v. Martini Club, 599 F.3d 458, 463 (2010). The purpose of Section 101.106 is to force plaintiffs "to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental

unit is vicariously liable, thereby reducing the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery." Mission, 253 S.W.3d at 657. Plaintiffs must make the irrevocable election of whom to bring claims against at the outset of litigation. "[T]he Tort Claims Act's election scheme is intended to protect governmental employees by favoring their early dismissal when a claim regarding the same subject matter is also made against the governmental employer." Id.

The Texas Supreme Court has held that a plaintiff's "nonchoice [is] an election to sue only the government." Univ. of Tex. Health Sci. Ctr. v. Rios, 542 S.W.3d 530, 537 (Tex. 2017) (citing Tex. Dep't of Aging & Disability Servs. v. Cannon, 453 S.W.3d 411, 417 (Tex. 2015)). Additionally, "[t]he TTCA strongly favors dismissal of suits against government employees." Carter v. Diamond URS Huntsville, LLC, 175 F. Supp. 3d 711, 175 (S.D. Tex. 2016) (quoting Tipps v. McCraw, 945 F. Supp. 2d 761, 766 (W.D. Tex. 2013)). Two ways an employee may be dismissed from a suit are outlined in Section 101.106 (e) and (f), which state:

> (e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

> (f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought

> under this chapter against the governmental
> unit, the suit is considered to be against the
> employee in the employee's official capacity
> only. On the employee's motion, the suit
> against the employee shall be dismissed unless
> the plaintiff files amended pleadings
> dismissing the employee and naming the
> governmental unit as defendant on or before
> the 30th day after the date the motion is
> filed.

Expanding on Section 101.106 (f), the Texas Supreme Court has held that "a suit against an employee in his official capacity is *not* a suit against the employee; it is, in all but name only, a suit against the governmental unit." Texas Adjutant General's Office v. Ngakoue, 408 S.W.3d 350, 357 (Tex. 2013) (citing Franka v. Velasquez, 332 S.W.3d 367, 382 n.68 (Tex. 2011)) (emphasis in original).

The TTCA defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." Tex. Civ. Prac. & Rem. Code § 101.001(5). The Texas Supreme Court has turned to the Restatement (Third) of Agency to provide additional clarity to the definition. Alexander v. Walker, 435 S.W.3d 789, 792 (Tex. 2014). "An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." Id. (quoting Restatement (Third) of Agency § 7.07(2) (2006)).

In specific regard to peace officers, "engaging in an arrest

is conduct that is generally within an officer's scope of employment; it is not an independent course of conduct that fails to serve any purpose of the employer." See Fink v. Anderson, 477 S.W.3d 460, 467 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (summarizing the Texas Supreme Court's holding in Alexander, 435 S.W.3d at 792). Courts have held that a police officer "who uses excessive force is still acting within the 'scope of employment' for purposes of the TTCA." Orr v. Copeland, No. A-14-CV-212-LY, 2015 WL 3901654, at *2 (W.D. Tex. 2015) (citing Tipps, 945 F. Supp. 2d at 766-67 (W.D. Tex. 2013). "Even if conducted with improper motives or in an improper manner, [officer's] actions remain within the general scope of duties of law enforcement officers." Tipps, 945 F. Supp. 2d at 767 (citing City of Lancaster v. Chambers, 883 S.W.2d 650, 658 (Tex. 1994); Ballantyne v. Champion Builders, Inc., 144 S.W.3d 417, 425-26 (Tex. 2004)).[40]

Plaintiff's complaint raised state-law claims of assault, battery, and false imprisonment against Defendant McCartney, as well as state law causes of actions for negligence and negligent hiring against Defendant Harris County. While Section 101.106 (e)

---

[40]     Plaintiff does not dispute that Defendant McCartney was acting within the course and scope of his employment with Harris County. See Doc. 14, Pl.'s 2d Am. Compl. p. 7-8  (". . . [Defendant] McCartney, acting in the course and scope of his employment with [Harris County]..."). Plaintiff contends that Defendant McCartney is not entitled to official immunity because Defendant McCartney cannot demonstrate that he was "performing a discretionary duty, acting in good faith, and acting within the scope of his lawful authority." Id. p. 8. Plaintiff is confusing official immunity with the statutory immunity provided by Section 101.106 (f). See Carter, 175 F. Supp. 3d at 752.

allows for dismissal of an employee when both an employee and the governmental unit are sued, this section was not triggered because Defendant Harris County did not file the present motion to dismiss on this basis. Section 101.106 (f) is also a less than perfect fit. Plaintiff's suit against Defendant McCartney is based on an arrest, which is within the general scope of his employment, and could have been brought against county, however the governmental unit is already named as a defendant and therefore cannot be substituted. It is clear that under the intended purpose of Section 101.106, Defendant McCartney should be dismissed;[41] however, if immunity has been waived, a suit against Defendant Harris County may continue. See Ngakoue, 408 S.W.3d at 359 ("If the plaintiff fails to substitute the government . . . then the case must be dismissed . . . [b]ut a suit against the governmental unit for which immunity is otherwise waived may go forward, just as a suit proceeds against the government when an employee is dismissed under [Section 101.106 (e)].") (internal citations omitted).

Regardless of which defendant is the proper party for the state law tort claims, the court turns to whether the TTCA waives immunity for the actions. The court addresses the validity of all of Plaintiff's claims.

Assault, battery, and false imprisonment are claims arising

---

[41]    Because the court has dismissed the state law claims against Defendant McCartney, the court need not consider Plaintiff's respondeat superior allegations regarding these dismissed claims.

out of intentional torts, which are specifically excluded from waiver of governmental immunity. See Section 101.057. Plaintiff cannot evade the intentional tort exception by simply pleading negligence where the essence of his claims arises from an intentional tort; simple characterization of the claims as negligence is insufficient to avoid application of the intentional torts exception. Tarrant Cty. Hosp. Dist. v. Henry, 52 S.W.3d 434, 441 (Tex. App.-Fort Worth 2001, no pet.)("A plaintiff cannot, however, circumvent the intentional tort exception simply by pleading negligence.").

Plaintiff has not alleged any negligent conduct on the part of Defendant McCartney, but instead has pled assault, battery, and false imprisonment which are clearly intentional torts. Plaintiff attempts to recharacterize the intentional acts of Defendant McCartney's alleged assault of Plaintiff using "a taser, handcuffs, a nightstick and boots" as negligent use of tangible property.[42] But these acts are clearly intentional as a matter of law. See City of Waco v. Williams, 209 S.W.3d 216, 223-24 (Tex. App.—Waco 2006, pet. denied) ("Plainly, . . . the [plaintiffs] have alleged claims that 'arise out' of the officers' use of force—repeated Tasering—against the decedent, which allege the intentional tort of assault. There is, properly speaking, no such thing as a negligent assault.") (internal quotations marks and citations omitted); see,

---

[42]    Doc. 14, Pl.'s 2d Am. Compl. p. 7.

e.g., Campbell v. City of San Antonio, 43 F.3d 973, 978 n.8 (5th Cir. 1995)(applying Texas law) ("The heart of [the plaintiff's] allegations of negligent use of tangible personal property does indeed seem merely a part of a larger claim for false arrest or false imprisonment."). Plaintiff has not alleged any facts that would support a negligence claim apart from his intentional tort claims. See Henry, 52 S.W.3d at 441. Therefore, the negligence claim is not viable and must be dismissed.

Turning to Plaintiff's negligent hiring claim, the Fifth Circuit has held that "failure to train or supervise is not a proper cause of action under the TTCA." Goodman v. Harris Cty., 571 F.3d 388, 394 (5th Cir. 2009) (citing Tex. Dep't of Pub. Safety v. Petta, 44 S.W.3d 575, 580 (Tex. 2001)). A cause of action "for negligent supervision or training must satisfy the TTCA's use of tangible property requirement." Tex. Dep't of Crim. Justice-Cmty. Justice Assistance Div. v. Campos, 384 S.W.3d 810, 815 (Tex. 2012) (citing Petta, 44 S.W.3d at 581). Plaintiff, without any elaboration, contends that Defendant Harris County "negligently hired, retained, trained, entrusted authority and personal property to, and supervised [Defendant] McCartney."[43] Plaintiff has failed to alleged that a "use" of tangible property was involved in Defendant Harris County's failure to train and supervise, thus, the TTCA does not waive Defendant Harris County's immunity for this

---

[43]     Id.

14

claim.  For the reasons set forth, Plaintiff's state law claims are barred by the TTCA and must be dismissed.[44]

## B.  Constitutional Claims

A plaintiff can establish a prima facie case under 42 U.S.C. § 1983 ("Section 1983") for the deprivation of civil rights by establishing: (1) a violation of a federal constitutional or statutory right; and (2) that the violation was committed by an individual acting under the color of state law.  Doe v. Rains Cty. Indep. Sch. Dist., 66 F.3d 1402, 1406 (5th Cir. 1995).  The statute creates no substantive rights but only provides remedies for deprivations of rights created under federal law.  Graham v. Connor, 490 U.S. 386, 393-94(1989).

The constitutional claims alleged against Defendants McCartney and Harris County are for false arrest, unlawful seizure, excessive force, and excessive and unnecessary property damage in violation of the Fourth Amendment, which protects an individual from "unreasonable searches and seizures."  U.S. Const. amend. IV.  The court first discusses the claims against Defendant McCartney and then examines the claims against the county.[45]

_____

[44]    The court finds that all tort claims against Defendant Harris County should be dismissed, thus, there is no need to discuss the issue of notice.

[45]    Defendants argue that Plaintiff was trespassing at the sports bar, and therefore no constitutional violations existed.  However, in a 12(b)(6) motion to dismiss, the court only considers the well-pled allegations within the complaint.  Defendants Harris County and McCartney filed extraneous documents, which were neither attached to the complaint nor central to the claim and referenced therein.  See Lone Star Fund, 594 F.3d at 387.  Therefore, the court has not considered arguments based on those documents at this pleading stage.

15

## 1. False Arrest

When bringing a claim for false arrest in violation of the Fourth Amendment, a plaintiff must show that the officer did not have probable cause to arrest. See Evans v. City of Meridian Miss., 630 F. App'x 312, 315 (5th Cir. 2015)(unpublished); Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001)(stating that the constitutional tort of false arrest requires "a showing of no probable cause"). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." Turner v. Driver, 848 F.3d 678, 694 (5th Cir. 2017). The officer's belief that probable cause is present must be objectively reasonable; it is irrelevant what his subjective beliefs were. Anderson v. Creighton, 483 U.S. 635, 641 (1987).

Plaintiff alleged that at the time he was arrested he had not acted in any way that was contrary to the law and, to his knowledge, no charges were ever filed. Based on the facts Plaintiff alleged in his complaint, there was no probable cause evident for his arrest. Plaintiff has therefore stated sufficient facts to support a constitutional claim of false arrest.

## 2. Unlawful Seizure

"[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."

Terry v. Ohio, 392 U.S. 1, 16 (1968).  Although probable cause is required to support a warrantless arrest, police officers may detain an individual for investigative purposes based on the less demanding standard of a reasonable suspicion of criminal activity. Goodson v. City of Corpus Christi, 202 F.3d 730, 736 (5th Cir. 2000).  Reasonable suspicion is a less stringent standard than probable cause and exists "when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the search and seizure." U.S. v. Estrada, 459 F.3d 627, 631 (5th Cir. 2006). In other words, investigative stops are constitutional when based on "a particularized and objective basis for suspecting the particular person stopped of criminal activity." Navarette v. California, 572 U.S. 393, 134 S. Ct. 1683, 1687 (2014) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).

Plaintiff alleged that, when Defendant McCartney approached him, Plaintiff was in the process of leaving the sports bar and had not broken any laws.  Plaintiff further maintained that Defendant McCartney prevented him from leaving the bar by using his nightstick to keep his car door from closing.  Construing the allegations in Plaintiff's complaint favorably to him and accepting as true the well-pleaded facts, the court finds that the allegations are sufficient to assert that Defendant McCartney seized Plaintiff, preventing him from leaving without any

reasonable suspicion.  Plaintiff has alleged sufficient facts in
his complaint, therefore this claim should not be dismissed.

### 3. Excessive Force

The Fourth Amendment, applied to state actors through the
Fourteenth Amendment, protects "[t]he right of the people to be
secure in their persons, houses, papers, and effects, against
unreasonable searches and seizures." U.S. Const. amend. IV.  In
order to establish an excessive-force claim, a plaintiff must show:
(1) an injury; (2) that resulted directly and only from the use of
force that was excessive; and (3) the force used was unreasonable.
Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011)(citing
Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007)).

Defendants argue that Plaintiff has no excessive force claim
because he suffered minor or incidental injuries.  "The
determination of whether a plaintiff's alleged injury is sufficient
to support an excessive force claim is context-dependent and is
'directly related to the amount of force that is constitutionally
permissible under the circumstances.'" Freeman v. Gore, 483 F.3d
404, 416 (5th Cir. 2007) (citing Ikerd v. Blair, 101 F.3d 430, 435
(5th Cir. 1996)).  Defendant Harris County cites Freeman to show
that minor and incidental injuries that occur in connection with
effectuating an arrest do not rise to a constitutional claim for
excessive force.

However, Plaintiff's allegations are that Defendant McCartney

repeatedly tased and kicked Plaintiff while he was handcuffed on the ground, tore the taser prongs from Plaintiff's chest, and left him in such a physical condition that the deputies at the jail would not book him. These allegations clearly raise a claim of excessive force.

### 4. Property Damage

The U.S. Supreme Court has held that "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment." United States v. Ramirez, 523 U.S. 65, 71 (1998). The Fifth Circuit has applied this standard only to the unnecessary destruction of property during the execution of a search or arrest warrant. See Richie v. Wharton Cty. Sheriff Dep't Star Team, 513 F. App'x 382, 386 (5th Cir. 2013) (unpublished).

Likewise, district courts have applied the Ramirez standard of "excessive or unnecessary destruction of property" only in cases in which the damage occurred during the execution of search or arrest warrants. See, e.g. Clark v. Fiske, No. SA-05-CA-0485-FB, 2005 WL 3617731, at *3 (W.D. Tex. Sept. 20, 2005) (unpublished). While Plaintiff pled there was damage to his vehicle, it was not as a result of the execution of a search warrant. Plaintiff's allegation of damage to his vehicle during his encounter with Defendant McCartney does not fall within this constitutional protection. This claim cannot survive.

## 5. County Liability

A county may be held liable under Section 1983 only for its own illegal acts, not pursuant to a theory of vicarious liability. Connick v. Thompson, 563 U.S. 51 (2011)(quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986)). To succeed on a claim under Section 1983, the plaintiff must establish, not only that an individual state actor violated their constitutional rights, but that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 847 (5th Cir. 2009)(citing Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)). "Official [local-government] policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 60; see also Peterson, 588 F.3d at 850.

In order to allege a constitutional violation against Harris County, Plaintiff must plead it, and not a county employee, violated Plaintiff's constitutional rights by alleging facts supporting the existence of a policy that was the moving force behind each allegation. The court has found that Plaintiff has stated claims for false arrest, unreasonable seizure and excessive force.

Defendant Harris County argues that Plaintiff cannot meet the elements of county liability under Section 1983 because he has not identified a policy or custom which led to the alleged violations of Plaintiff's constitutional rights. Plaintiff, in his response, asserts that he has specifically pled the existence of a widespread custom. Plaintiff points out in his response that his complaint stated:

> There is a widespread practice of officials or employees of Harris County, Texas, including Sheriff's deputies, of using excessive force in violation of the clearly established constitutional rights of the citizenry. This practice is so common and well settled as to constitute a custom that fairly represents policy. In this specific instance, the County *adopted and ratified* McCartney's use of objectively unreasonable and excessive force [as well as unlawful arrest and detention] against [Plaintiff]. This incident was reported to the Harris County Sheriff's Office Internal Affairs Division, specifically, to Sergeant Gary Rodgers. Harris County officials and policymakers declined to punish McCartney in anyway, thereby *ratifying and adopting* the widespread and unlawful practice custom, and policy . . . that has, and continues to, permeate the Sheriff's department and other law enforcement officials and employees of Harris County, Texas.[46]

While the Fifth Circuit has recognized ratification as a theory of liability against a municipality when the behavior of a state actor is approved by the policymaker, it has refused to find ratification "simply because a municipality failed to punish an

---

[46]    <u>See</u> Doc. 14, pp. 11-12 (emphasis added).

21

actor for those actions on one occasion and [has] refused to infer an official policy from a single isolated failure to punish an officer's misconduct." Henderson v. Anderson, 463 F. App'x 247, 250 (5th Cir. 2012) (unpublished) (citing Valle v. City of Houston, 613 F.3d 536, 542-43 (5th Cir.2010)); Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992). Precedent limits the application of ratification to "extreme factual situation[s]" and explains that "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the [local government]." Peterson 588 F.3d at 848 (citing Coon v. Ledbetter, 780 F.2d 1158, 1161-62 (5th Cir. 1986)). "[A] showing of such extreme situations *requires more* than a showing that the [local government] failed to adequately punish the offending officer for illegal conduct." Rodriquez v. City of Houston, 651 F. App'x 282, 286 (5th Cir. 2016) (unpublished) (citing Peterson 588 F.3d at 848) (emphasis added).

In the present case, Plaintiff has failed to provide any facts of unconstitutional policies and has merely presented threadbare recitals of the cause of action. While the Fifth Circuit has held that a custom or policy can be established based decisions made by a policy maker in an isolated decision, Plaintiff has failed to present anything more than conclusory allegations and only points to an internal affairs investigation that did not result in any punishment. The allegations are too vague to raise more than

speculation that an official policy was the moving force behind the violation of his constitutional rights, which is not enough to state a claim under <u>Twombly</u> and <u>Iqbal</u>.

## IV. Conclusion

Based on the foregoing, the court **DENIES AS MOOT** Defendant Harris County's Motion to Dismiss Plaintiff's First Amended Complaint and Motion to Dismiss Plaintiff's Second Amended Complaint, and **GRANTS IN PART AND DENIES IN PART** Defendant Harris County's Third Motion to Dismiss and Defendant McCartney's Motion to Dismiss.

Plaintiff has already amended his complaint twice. The court is reluctant to grant further opportunities to amend because it believes that additional facts will not overcome the applicable law. However, if Plaintiff believes that he can adequately address the pleading deficits cited in this memorandum, he must file a motion for leave to amend concurrently with timely-filed objections to this memorandum.

In light of the findings above, the court notes that the following claims remain against Defendant McCartney: Plaintiff's Section 1983 claims for violation of his Fourth Amendment right to be free from (1) false arrest, (2) unlawful seizure, and (3) excessive force.

**SIGNED** in Houston, Texas, this <u>10th</u> day of August, 2018.

_____
U.S. MAGISTRATE JUDGE