United States District Court
Southern District of Texas

**ENTERED**

July 02, 2019

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BENJAMIN MATTHEWS,                §
                                  §
        Plaintiff,                §
                                  §
v.                                §     CIVIL ACTION NO. H-18-0014
                                  §
HARRIS COUNTY, et al.,            §
                                  §
        Defendants.               §

### MEMORANDUM OPINION

Pending before the court[1] is Defendant KFGF Enterprises, Inc., d/b/a Carrington's, Carrington's Sports Bar, and Carrington's Billiards' ("Defendant KFGF") Motion for Summary Judgment (Doc. 44) and Defendant Eric McCartney's ("Defendant McCartney") Motion for Summary Judgment (Doc. 45). The court has considered the motions, the responses, the replies, all other relevant filings, and the applicable law. For the reasons set forth below, Defendant KFGF's Motion for Summary Judgment is **GRANTED** and Defendant McCartney's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

## I.  Case Background

Benjamin Matthews ("Plaintiff") filed this action against multiple defendants, alleging violations of 42 U.S.C. § 1983 ("Section 1983") against Harris County and Defendant McCartney for excessive force, unlawful seizure and false arrest.[2] Additionally,

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. See Doc. 38, Ord. Dated July 11, 2018.

[2]    See Doc. 14, Pl.'s 2nd Am. Compl. pp. 6-20.

Plaintiff brought causes of action for assault and battery, negligence, false imprisonment, and negligent hiring, retention, training, and supervision against Defendant KFGF.[3]

**A.   <u>Factual Background</u>**[4]

On June 14, 2016, Defendant McCartney and Harris County Deputy Sheriff Torrance Johnson ("Deputy Johnson") were employed as private security guards at Carrington's Sports Bar ("Carrington's").[5] Defendant McCartney and Deputy Johnson were both wearing their Harris County Sheriff's Office uniforms and badges.[6] After Carrington's closed, Defendant McCartney and Deputy Johnson walked to a nearby restaurant.[7] Defendant McCartney and Deputy Johnson were returning to the Carrington's parking lot when Defendant McCartney observed a group of people observing a verbal confrontation between a man and a woman.[8] Defendant McCartney and Deputy Johnson approached the couple and advised them to leave the parking lot.[9]

---

[3]   See <u>id.</u>

[4]   For the purposes of these motions, the court will only consider the following evidence: Plaintiff's Sworn Statement (Doc. 44-1); Defendant McCartney's Affidavit (Doc. 44-4); and Plaintiff's Medical Record (Doc. 46).

[5]   See Doc. 44-4, Ex. D to Def. KFGF's Mot. for Summ. J., Def. McCartney's Aff. p. 2.

[6]   See <u>id.</u>

[7]   See <u>id.</u>  p. 3.

[8]   See <u>id.</u> pp. 3, 6.

[9]   See <u>id.</u> p. 6.  According to Defendant McCartney, the arguing couple left the parking lot.  <u>Id.</u>  On the other hand, Plaintiff admits that he was the man arguing with the unknown woman. <u>See</u> Doc. 44-1, Ex. A to Def. KFGF's Mot. for

According to Plaintiff, Defendant McCartney, without any provocation, approached Plaintiff and said, "Do you want to go to jail?"[10] Plaintiff told Defendant McCartney, "No, I'm leaving now," and made repeated attempts to shut his car door, but was unable to do so because Defendant McCartney had wedged his nightstick in the car door.[11] Defendant McCartney told Plaintiff, "You're just damaging your car," and instructed Plaintiff to step out of his car.[12]

Plaintiff further related that he complied with Defendant McCartney's demand to leave his vehicle, but voiced his displeasure at doing so.[13] Defendant McCartney tased Plaintiff who fell to the ground.[14] Plaintiff heard Defendant McCartney say, "I got him in the head," before receiving a kick in the head from Defendant McCartney.[15] Plaintiff was tased again in the upper back and neck.[16] Plaintiff recounted that he was tased a third time after asking,

---

Summ. J., Pl.'s Sworn Statement p. 1.  For purposes of this motion, this factual dispute is not material.

[10]    See Doc. 44-1, Ex. A to Def. KFGF's Mot. for Summ. J., Pl.'s Sworn Statement p. 1.

[11]    See id.

[12]    See id.

[13]    See id.

[14]    See id.

[15]    See id.

[16]    See id. p. 2.

3

"What did I do?"[17]   Plaintiff remained on the ground until instructed to stand.[18]   Defendant McCartney commented, "This might sting a little bit" when he pulled the taser probes out of Plaintiff's skin.[19]

In Defendant McCartney's version of the incident, he and Deputy Johnson approached three men and advised them to leave the parking lot, but Plaintiff refused.[20]   Deputy Johnson observed a clear bag of marijuana inside Plaintiff's vehicle.[21]   Defendant McCartney ordered Plaintiff to exit the vehicle and to put his hands behind his back, but Plaintiff refused.[22] Defendant McCartney then made several attempts to forcibly remove Plaintiff from his vehicle.[23]

Defendant McCartney averred he deployed his taser after unsuccessfully attempting to remove Plaintiff from his vehicle.[24] The taser malfunctioned, was dropped by Defendant McCartney, and a

---

[17]     See id.

[18]     See id.

[19]     See id.

[20]     See Doc. 44-4, Ex. D to Def. KFGF's Mot. for Summ. J., Def. McCartney's Aff. p. 6.

[21]     See id.

[22]     See id.

[23]     See id.

[24]     See id.

struggle ensued between Plaintiff and Defendant McCartney.[25]  During the struggle, both Plaintiff and Defendant McCartney fell to the ground, the taser revived, and both men felt the effects of the taser.[26]  Defendant McCartney was able to get on top of Plaintiff and deliver strikes to Plaintiff's face with his hands and additional strikes with his right knee, all while instructing Plaintiff to stop resisting.[27]  Deputy Johnson secured Plaintiff in handcuffs, and Defendant McCartney stopped striking Plaintiff.[28]

The Harris County District Attorney's Office authorized an arrest of Plaintiff for Interfering with a Public Servant, and one of the officers called the Houston Police Department ("HPD") for transport.[29]

However, upon arrival at the City of Houston Inmate Processing Center, the officers were told that Plaintiff was too injured to be booked.[30]  The HPD officers took Plaintiff to the Ben Taub Hospital emergency department.[31]  The HPD officers walked Plaintiff into the hospital, signed him in, and left him there.[32]

---

[25]   See id.

[26]   See id.

[27]   See id.

[28]   See id.

[29]   See id.

[30]   See id.

[31]   See id. pp. 6-7.

[32]   See id. p. 7.

According to the Ben Taub Hospital records, Plaintiff suffered from multiple abrasions to his face and chest with some bruising on his back, face, and limbs.[33]   Plaintiff was never charged with any crime relating to this incident.[34]

## B.   **Procedural Background**

On December 12, 2017, Plaintiff filed this action in state court against Harris County, an officer, "E. McKenny," and the sports bar, "Carrington's".[35]   Defendant Harris County removed the lawsuit to this court on January 2, 2018.[36]   Plaintiff amended his complaint to comply with federal pleading standards on February 19, 2018.[37]   Plaintiff filed a second amended complaint, with the court's leave, on February 22, 2018, only changing the misspelling of Defendant McCartney's name.[38]

On July 11, 2018, the court issued a memorandum opinion dismissing Harris County from the case and dismissing claims

---

[33]     See Doc. 46, Ex. 2 to Def. McCartney's Mot. for Summ. J., Pl.'s ED Notes (Sealed).

[34]     See Doc. 49, Pl.'s Resp. to Def. McCartney's Mot. for Summ. J. p. 3; Doc. 50, Def. McCartney's Reply in Support of Mot. for Summ. J. p. 4.

[35]     See Doc. 1-3, Pl.'s Orig. Pet.

[36]     See Doc. 1, Not. of Removal; Doc. 2, Def. Harris County's Mot. To Dismiss.

[37]     See Doc. 11, Pl.'s 1st Am. Compl.

[38]     See Doc. 13, Pl.'s Mot. For Leave to File 2nd Am. Compl.; Doc 14, Pl.'s 2nd Am. Compl.

against Defendant McCartney except for the Section 1983 claims for false arrest, unlawful seizure, and excessive force.[39]

On August 20, 2018, Defendant McCartney filed an answer to Plaintiff's amended complaint and demanded a jury trial.[40] Defendant KFGF, filed its pending motion for summary judgment on February 7, 2019.[41] Defendant McCartney filed his pending motion for summary judgment on February 15, 2019.[42] Plaintiff filed a response to Defendant KFGF's pending motion for summary judgment on February 28, 2019.[43] Defendant KFGF filed a reply in support of its motion for summary judgment on March 7, 2019.[44] Plaintiff filed a response to Defendant McCartney's pending motion for summary judgment on March 8, 2019.[45] Defendant McCartney filed a reply in support of his motion for summary judgment on March 15, 2019.[46]

## II.   Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R.

---

[39]   See Doc. 39, Mem. Op. Dated Aug. 10, 2018 p. 23.

[40]   See Doc. 40, Def. McCartney's Ans. to Pl.'s 2nd Am. Compl.

[41]   See Doc. 44, Def. KFGF's Mot. for Summ. J.

[42]   See Doc. 45, Def. McCartney's Mot. for Summ. J.

[43]   See Doc. 47, Pl.'s Resp. to Def. KFGF's Mot. for Summ. J.

[44]   See Doc. 48, Def. KFGF's Reply in Support of Mot. for Summ. J.

[45]   See Doc. 49, Pl.'s Resp. to Def. McCartney's Mot. for Summ. J.

[46]   See Doc. 50, Def. McCartney's Reply in Support of Mot. For Summ. J.

Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A., 759 F.3d 498, 504 (5th Cir. 2014). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Coastal Agricultural Supply, Inc., 759 F.3d at 504 (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. See id. at 505 (quoting Celotex Corp., 477 U.S. at 323). If the movant carries its burden, the nonmovant may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute. See id. The court must accept all of the nonmovant's evidence as true and draw all justifiable inferences in her favor. Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A., 759 F.3d 498, 505 (5th Cir. 2014)(quoting Anderson, 477 U.S. at 255).

### III. Analysis

Currently pending against Defendant McCartney are claims brought pursuant to Section 1983 for: (1) excessive force; (2) unlawful seizure; and (3) false arrest.[47]

Defendant McCartney moves for summary judgment on the unlawful seizure and false arrest claims, arguing that there was probable cause to arrest and seize Plaintiff.[48] Defendant McCartney additionally argues that even if he reasonably but mistakenly believed he had probable cause to arrest, he is still entitled to qualified immunity.[49] Finally, Defendant McCartney argues that Plaintiff's excessive force claim is not supported by Plaintiff's own medical records and, even if Plaintiff's injuries were considered more than de minimis, Defendant McCartney is entitled to qualified immunity.[50]

Defendant KFGF has moved for summary judgment on two bases: (1) Defendant KFGF argues that Defendant McCartney was acting in his capacity as a sheriff's deputy and not as an employee of Carrington's, and, therefore, it is not liable for Defendant McCartney's conduct; and (2) Defendant McCartney's employment with Carrington's was not a proximate cause of the incident, and

---

[47]    See Doc. 45, Def. McCartney's Mot. For Summ. J. p. 9.

[48]    See id. pp. 8, 11.

[49]    See id. p. 11.

[50]    See id. pp. 19, 23.

Plaintiff cannot succeed on his claim of negligent hiring, retention, training, supervision, or entrustment against Defendant KFGF.[51]

## A. Plaintiff's Section 1983 Claims Against Defendant McCartney

A plaintiff can establish a prima-facie case under Section 1983[52] for the deprivation of civil rights by establishing: (1) a violation of a federal constitutional or statutory right; and (2) the violation was committed by an individual acting under the color of state law. Doe v. Rains Cty. Indep. Sch. Dist., 66 F.3d 1402, 1406 (5th Cir. 1995). Section 1983 creates no substantive rights, but does provide remedies for deprivations of rights created under federal law. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

Government officials are entitled to qualified immunity from liability for civil damages "unless [(1)] the official violated a statutory or constitutional right [(2)] that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012) (citing Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). Courts have discretion to determine in

---

[51]    See Doc. 44, Def. KFGF's Mot. for Summ. J. pp. 6, 11.

[52]    The provision reads, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

which order the two prongs are considered.  Al-Kidd, 563 U.S. at 735.  Qualified immunity protects an officer regardless of whether the error was "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotations omitted) (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004)).  By pleading qualified immunity in good faith, a summary judgment movant shifts the burden to the nonmovant to rebut the movant's assertion.  Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008).

### 1.  **Excessive Force**

In order to establish a section 1983 excessive force claim, a plaintiff must show: (1) an injury; (2) that resulted directly and only from the use of force that was excessive to the need; and (3) that the force used was objectively unreasonable.  Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011) (citing Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007)).  The plaintiff's resulting injury need not be significant but must be more than de minimis.  Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001).

Considering the first element, Defendant McCartney admits that the City of Houston Inmate Processing Center refused to accept Plaintiff for booking due to his physical condition.[53]  Plaintiff's medical records show that he had complained of generalized pain and

---

[53]    See Doc. 44-4, Ex. D to Def. KFGF's Mot. for Summ. J., Def. McCartney's Aff. pp. 6-7; Doc. 46, Ex. 2 to Def. McCartney's Mot. for Summ. J., Pl.'s ED Notes & Ben Taub Aff. pp. 1-5 (sealed).

had lacerations and multiple abrasions to his face and chest with some bruising on his back, face, and limbs.[54]  The Fifth Circuit has ruled that injuries such as abrasions, head injuries, and contusions are significant enough to satisfy the injury element of an excessive force claim.  See Anderson v. McCaleb, 480 F. App'x 768, 772 (5th Cir. 2012)(unpublished).

Considering the second element of an excessive force claim, Plaintiff's injuries resulted directly from Defendant McCartney's use of force.  Defendant McCartney states that he was able to deliver strikes to Plaintiff's "face area," and made multiple strikes with his knee.[55]  Defendant McCartney also deployed his taser on Plaintiff.[56]  Defendant McCartney does not contend that Plaintiff or Deputy Johnson contributed in any way to Plaintiff's injuries.[57]

The third excessive force element is whether the officer acted reasonably in terms of the amount of force deployed.  See Tarver v. City of Edna, 410 F.3d 745, 751-53 (5th Cir. 2005).  "The objective reasonableness of the force . . . depends on the facts and circumstances of the particular case, such that the need for force

---

[54]     Doc. 46, Ex. 2 to Def. McCartney's Mot. for Summ. J., Pl.'s ED Notes & Ben Taub Aff. p. 3 (sealed).

[55]     See Doc. 44-4, Ex. D to Def. KFGF's Mot. for Summ. J., Def. McCartney's Aff. p. 6.

[56]     See id.

[57]     See id.

determines how much force is constitutionally permissible." Collier v. Montgomery, 569 F.3d 214, 218-19 (5th Cir. 2009) (internal quotations omitted) (quoting Bush v. Strain, 513 F.3d 492, 501 (5th Cir. 2008)).

Reasonableness considerations regarding the need for and the amount of force necessary include: 1) how severe the crime at issue was; (2) if the suspect presented an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to escape.  See Graham v. Connor, 490 U.S. 386, 396 (1989).  Reasonableness is judged from the perspective of a reasonable officer on the scene, not in hindsight. Ramirez v. Knoulton, 542 F.3d 124, 128 (5th Cir. 2008).  In judging an officer's actions, the court must recognize the difficulty of making split-second judgment calls under high pressure conditions and accord the officer appropriate latitude.  Graham, 490 U.S. at 396-97.

These standards were clearly established at the time of the incident.  See Anderson v. McCaleb, 480 F. App'x 768, 773 (5th Cir. 2012)(stating that an officer "should have known that he could not continue to shock [an individual] with the taser after he was no longer resisting arrest"); Bush v. Strain, 513 F.3d 492, 502 (5th Cir. 2008)(determining a police officer should know he cannot forcefully slam a suspect into a vehicle when she has been subdued).

Turning to the facts of this case, the summary judgment evidence lends itself to two significantly different factual scenarios, either of which is supported by sufficient evidence to support a verdict.  If Plaintiff's version of the incident is believed, then Defendant McCartney violated clearly established law when he continued to use force on an unresisting individual.  If Defendant McCartney's testimony is credited, jurors might agree that the use of force was objectively reasonable under the circumstances.  See Anderson, 480 F. App'x at 773; Bush, 513 F.3d at 502.

As there is summary judgment evidence to support both versions, the court cannot decide as a matter of law whether Defendant McCartney violated Plaintiff's constitutional rights.  A jury must decide whom to believe and must weigh the evidence as a whole.  Because at least one version of the facts does not comply with clearly established law at the time of the incident, Defendant McCartney is not entitled to qualified immunity at this stage of the lawsuit.

### 2.   Unlawful Seizure

"[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Terry v. Ohio, 392 U.S. 1, 16 (1968).  Although probable cause is required to support a warrantless arrest, police officers may detain an individual for investigative purposes based on the less

14

demanding standard of a reasonable suspicion of criminal activity. Goodson v. City of Corpus Christi, 202 F.3d 730, 736 (5th Cir. 2000). Reasonable suspicion is a less stringent standard than probable cause and exists "when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the search and seizure." U.S. v. Estrada, 459 F.3d 627, 631 (5th Cir. 2006). In other words, investigative stops are constitutional when based on "a particularized and objective basis for suspecting the particular person stopped of criminal activity." Navarette v. California, 572 U.S. 393 (2014)(quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).

Viewing the facts in Plaintiff's favor, Defendant McCartney initiated a stop of Plaintiff because: (1) Plaintiff was engaged in a verbal confrontation with a female; (2) this verbal confrontation took place at approximately 2:00 a.m. in a bar parking lot; and (3) Plaintiff was present in the bar parking lot after the bar had closed for the evening.[58] Defendant McCartney avers that he approached Plaintiff and other men with the intent of dispersing them from the parking lot of a closed business and Deputy Johnson observed marijuana in Plaintiff's vehicle.[59]

---

[58]    See Doc. 44-1, Ex. A to Def. KFGF's Mot. for Summ. J., Pl.'s Sworn Statement pp. 1-3; Doc. 44-4, Ex. D to Def. KFGF's Mot. For Summ. J., Def. McCartney's Aff. pp. 1-8.

[59]    See Doc. 44-4, Ex. D to Def. KFGF's Mot. For Summ. J., Def. McCartney's Aff. p. 6.

Under either scenario, these "specific and articulable facts" coupled with the rational inferences from them would lead a reasonable person in Defendant McCartney's position to form a reasonable suspicion of criminal activity.  A peace officer could have reasonable suspicions of public intoxication, possible assault, and other offenses giving a police officer a reasonable suspicion to investigate.  See Navarette, 572 U.S. at 369-97; United States v. Gutierrez-Para, 711 F. App'x 752, 752-53 (5th Cir. 2017)(unpublished)(holding that police had reasonable suspicion to investigate after seeing two vehicles pull into a vacant parking lot around 2:00 a.m.); United States v. Wilson, 342 F. App'x. 46, 47 (5th Cir. 2009)(unpublished)(holding that police hired as security in a private parking lot at night had reasonable suspicion to stop a person walking between cars and concealing an object beneath his shirt).

Summary judgment is therefore appropriate on Plaintiff's unlawful seizure claim.

**3.   False Arrest**

When bringing a claim for false arrest in violation of the Fourth Amendment, a plaintiff must show that the officer did not have probable cause to arrest. See Evans v. City of Meridian Miss., 630 F. App'x 312, 315 (5th Cir. 2015)(unpublished); Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001)(stating that the constitutional tort of false arrest requires "a showing of no probable cause").

16

Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." Turner v. Driver, 848 F.3d 678, 694 (5th Cir. 2017). The officer's belief that probable cause is present must be objectively reasonable; it is irrelevant what his subjective beliefs were. Anderson v. Creighton, 483 U.S. 635, 641 (1987). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 245 (1983).

These standards were clearly established at the time of the incident. See, e.g., United States v. Vasquez, 534 F.2d 1142, 1145 (5th Cir. 1976)(stating that flight alone from a law enforcement officer is not enough to support a finding of probable cause, but it can be an important component in certain situations for an officer to take action).

According to the summary judgment record, Plaintiff was arrested for Interfering with a Public Servant.[60] The court assumes that this is Interference with Public Duties, found at Section 38.15 of the Texas Penal Code. A person commits this offense if he with criminal negligence "interrupts, disrupts, impedes or otherwise interferes with[] a peace officer while the peace officer

---

[60]   See Doc. 44-4, Ex. D to Def. KFGF's Mot. For Summ. J., Def. McCartney's Aff. p. 6.

is performing a duty or exercising authority imposed or granted by law. . . ."[61]

Considering the facts in the non-movant's favor, Plaintiff recounts that he was approached by Defendant McCartney who asked, "Do you want to go to jail?"[62]   Plaintiff responded, "No, I'm leaving now," and attempted to shut his car door, presumably in order to leave.[63]   Plaintiff claims he was "doing everything the deputy told me to do."[64]

If the jury credits Plaintiff's version of the event, Plaintiff attempted to leave the parking lot as instructed but was prevented by Defendant McCartney.   Accordingly, Defendant McCartney's actions would not comply with clearly established law because Plaintiff did not interfere with Defendant McCartney's actions as a peace officer.   Because at least one version of the incident does not comply with clearly established law, Defendant McCartney is not entitled to qualified immunity at this time.

**B. Claims Against Defendant KFGF**

Defendant KFGF argues that it is entitled to summary judgment because: (1) Defendant McCartney was acting in his capacity as a police officer at the time of the incident, and not as an employee

---

[61]   See V.T.C.A. Texas Penal Code § 38.15(a)(1).

[62]   See Doc. 44-1, Ex. A to Def. KFGF's Mot. for Summ. J., Pl.'s Sworn Statement p. 1.

[63]   See id.

[64]   See id. p. 2.

18

of Carrington's; and (2) Defendant McCartney's employment with Carrington's was not a proximate cause of the incident.[65]

Peace officers keep their position as peace officers twenty-four hours a day and are not relieved of their duties merely because they are off duty. Blackwell v. Harris Cty., 909 S.W.2d 135, 139 (Tex. App.–Houston [14th Dist.] 1995, writ denied). Therefore, an officer's conduct falling within the scope of his employment is not determined by whether an officer is officially on or off duty. See Harris Cty. v. Gibbons, 150 S.W.3d 877, 882 (Tex. App.–Houston [14th Dist. 2004, no pet.). The more important question is: "[I]n what capacity was the officer acting at the time he committed the acts for which the complaint was made?" Blackwell, 909 S.W.2d at 139; see also Kraidieh v. Nudelman, No. 01-15-01001-CV, 2016 WL 6277409, at *5 (Tex. App.–Houston [1st Dist.] Oct. 27, 2016, no pet.)(unpublished)(citing Blackwell, 909 S.W.2d at 139). "If an off-duty officer observes a crime, as a matter of law he becomes an on-duty officer." Cherqui v. Westheimer St. Festival Corp., 116 S.W.3d 337, 344 (Tex. App.–Houston [14th Dist.] 2003, no pet.).

If the facts are viewed in the best possible light for Plaintiff, the court cannot find any material dispute of fact that Defendant McCartney was not acting as a peace officer. It is undisputed that Defendant McCartney and Deputy Johnson were working

---

[65]    See Doc. 44, Def. KFGF's Mot. for Summ. J. pp. 6, 11.

an approved extra job for Defendant KFGF, and that Defendant McCartney was wearing both his Harris County Sheriff's Office uniform and badge.  Importantly, Defendant McCartney was off-duty because Carrington's had closed.  As Defendant McCartney was leaving the restaurant and walking to his vehicle, he became aware of a disturbance in the Carrington's parking lot and took actions to address it.

These facts do not raise a material issue of fact that Defendant McCartney was acting as an employee of Defendant KFGF. The bar had closed and Defendant McCartney had left the premises only to return to disperse individuals involved in an altercation. As a matter of undisputed fact, Defendant McCartney was acting in his official role as a peace officer, and therefore Defendant KFGF cannot be vicariously liable for Defendant McCartney's actions. Accordingly, summary judgment is appropriate in favor of Defendant KFGF on all of Plaintiff's claims.

### IV.  Conclusion

Based on the foregoing, Defendant KFGF's motion for summary judgment is **GRANTED**.  Defendant McCartney's motion for summary judgment is **GRANTED** on Plaintiff's claim for unlawful seizure and **DENIED** on Plaintiff's claims of false arrest and excessive use of force.

**SIGNED** in Houston, Texas, this 2nd day of July, 2019.

20

Nancy K. Johnson
United States Magistrate Judge